**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARIA ISAURA MEJIA<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>      Plaintiff,<br><br>v.<br><br>CAPITAL CONSTRUCTION<br>ENTERPRISES, INC.<br>d/b/a CAPITAL CONSTRUCTION<br>ENTERPRISES<br>1330 Locust Road NW<br>Washington, DC 20012<br><br>MARIA CORRALES<br>1330 Locust Road NW<br>Washington, DC 20012<br><br>      Defendants. | Civil Action No. _____ |

**COMPLAINT**

1. Defendants were hired by the District of Columbia Department of Health ("DOH") to clean and disinfect government buildings during the COVID-19 pandemic. Plaintiff worked for Defendants as a janitor at DOH Headquarters.

2. While Plaintiff worked for Defendants, Defendants denied her overtime wages by paying the same regular hourly rate across all hours worked. Even worse: when Plaintiff (who was working 70-hour weeks to help keep DOH workers safe from COVID-19) herself contracted COVID-19, Defendants denied her paid leave and terminated her employment.

3.      Plaintiff brings this action against Capital Construction Enterprises, Inc. and Maria Corrales ("Defendants") to recover damages for Defendants' willful failure to pay overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code, § 32-1001 *et seq.*; and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*

4.      Plaintiff also brings this action against Defendants to recover damages for Defendants' willful failure to provide paid leave, and for Defendants' retaliatory termination, pursuant to the Emergency Paid Sick Leave Act ("EPSLA") (Section 5101 of the Families First Coronavirus Response Act ("FFCRA"), 116 P.L. 127, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, 134 Stat. 178).

## Jurisdiction and Venue

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

6.      Venue is proper pursuant to 28 U.S.C. § 1391 (b), because all Defendants reside in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## Parties

7.      Plaintiff Maria Isaura Mejia is an adult resident of the District of Columbia.

8.      Defendant Capital Construction Enterprises, Inc. is a District of Columbia corporation. Its principal place of business is located at 1330 Locust Road NW, Washington, DC 20012. It does business as Capital Construction Enterprises. Its registered agent for service of process is Maria P. Corrales, 1330 Locust Road NW, Washington, DC 20012.

9. Defendant Maria Corrales is an adult resident of the District of Columbia. She resides at 1330 Locust Road NW, Washington, DC 20012. She is an owner and officer of Defendant Capital Construction Enterprises, Inc. She exercises exclusive control over the operations of Capital Construction Enterprises, Inc. — including its pay practices.

**Factual Allegations**

10. Plaintiff worked for Capital Construction Enterprises from approximately November 7, 2020 through approximately December 19, 2020.

11. Plaintiff worked for Capital Construction Enterprises as a janitor.

12. At all relevant times, Plaintiff worked in the District of Columbia.

13. At all relevant times, Plaintiff worked at the District of Columbia Department of Health headquarters, located at 899 North Capitol Street NE, Washington, DC 20002.

14. Plaintiff's job duties primarily consisted of cleaning and sanitizing the offices, bathrooms, halls, walls, conference rooms, and common areas of the building.

15. Plaintiff typically and customarily worked seven days per week.

16. Plaintiff typically and customarily worked approximately seventy hours per week.

17. Plaintiff typically and customarily started each workday at 8:00 p.m.

18. Plaintiff typically and customarily ended each workday at 6:00 a.m.

19. At all relevant times, Defendants paid Plaintiff approximately $21.00 per hour.

20. At all relevant times, Defendants paid Plaintiff by check.

21. At all relevant times, Plaintiff worked more than forty hours per workweek for Defendants.

22. At all relevant times, Defendants paid Plaintiff the same regular hourly rate across all hours worked.

23. At all relevant times, Defendants did not pay Plaintiff overtime wages — or one and one-half times her regular hourly rate for hours worked in excess of forty in a workweek.

24. Defendants owe Plaintiff approximately $2,205.00 in overtime wages (excluding liquidated damages).

25. In December 2020, Plaintiff contracted COVID-19.

26. When Plaintiff requested time off from work, Defendants only provided Plaintiff with a few days of *unpaid* leave.

27. Then, on December 20, 2020, Michael Alexander Reyes, Plaintiff's immediate supervisor, informed her that she could no longer work for Defendants. Mr. Reyes sent Plaintiff the following text message:

> "Miss Maria, I have informed Miss Maria [Corrales] of your health status. Because of your COVID-19 positive result, it won't be possible for you to continue with your job. Miss Maria [Corrales] has said that you can no longer go to work." (*translated from Spanish to English*). *See* Ex. A (original text message).

28. Six days later, on December 26, 2020, Mr. Reyes clarified that Plaintiff was permanently terminated. Mr. Reyes sent Plaintiff the following text message:

> "Good evening Maria, it's not about being afraid of someone or something. When you informed us that you had tested positive for COVID, it was not possible to allow you to continue working, and for that reason, we had to look for someone to fill that position." (*translated from Spanish to English*). *See* Ex. B (original text message).

29. In short, when Plaintiff contracted COVID-19 and sought leave to quarantine, Defendants terminated Plaintiff's employment in retaliation.

30. Plaintiff remained unemployed until approximately April 23, 2021.

31. For every week without work, Plaintiff lost $1,785 in wages ((40 hours $\times$ $21.00) (regular hours) + (30 hours $\times$ $21 $\times$ 1.5) (overtime hours)).

32. Plaintiff was able to work but unemployed for approximately seventeen weeks, from December 27, 2020 through April 23, 2021,

33. Due to Defendants' retaliatory termination, Plaintiff lost approximately $30,345.00 in wages.

34. Defendant Maria Corrales participated in the decision to hire employees on behalf of Capital Construction Enterprises.

35. Defendant Maria Corrales participated in the decision to hire Michael A. Reyes.

36. Defendant Maria Corrales authorized Michael A. Reyes to act as Plaintiff's supervisor and to make decisions on hiring and firing.

37. Defendant Maria Corrales participated in the decision to hire Plaintiff.

38. Defendant Maria Corrales participated in the decisions to set Plaintiff's rate and manner of pay.

39. Defendant Maria Corrales participated in the decisions to set Plaintiff's work schedule.

40. Defendant Maria Corrales had the authority to sign checks on behalf of Capital Construction Enterprises.

41. Defendant Maria Corrales has signed checks on behalf of Capital Construction Enterprises.

42. Defendants provided Plaintiff the cleaning supplies and equipment she needed to perform her job duties.

43. At all relevant times, each Defendant had the power to hire and fire Plaintiff.

44. At all relevant times, each Defendant had the power to control Plaintiff's work schedule.

45. At all relevant times, each Defendant had the power to supervise and control Plaintiff's work.

46. At all relevant times, each Defendant had the power to set Plaintiff's rate and manner of pay.

47. At all relevant times, Defendants were aware that they were legally required to pay Plaintiff one and one-half times her regular hourly rate for all hours worked in excess of forty hours in any one workweek.

48. At all relevant times, Defendants were aware that they were required to provide 80 hours of paid leave under the EPSLA.

49. At all relevant times Defendants were aware that it was unlawful to terminate an employee because that employee had contracted COVID-19, or had requested leave under the EPSLA.

50. At all relevant times, the annual gross volume of Defendants' business exceeded $500,000.00.

51. At all relevant times, Defendants had two or more employees who handled goods and materials that had traveled in or had been produced in interstate commerce.

52. At all relevant times, Defendants had two or more employees who handled goods and materials, such as disinfectants, cleaning agents, and mops, that were either produced or purchased outside of the District of Columbia.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

53. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

54. Each Defendant was an "employer" of Plaintiff within the meaning of the FLSA. 29 U.S.C. § 203(d).

55. The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. 29 U.S.C. § 207(a)(1). This regular hourly rate cannot be lower than the applicable state or local minimum wage. 29 C.F.R. § 778.5.

56. Defendants violated the FLSA by knowingly failing to pay Plaintiff at least one and one-half times her regular hourly rate for hours worked in excess of forty hours in any one workweek.

57. Defendants' violations of the FLSA were willful.

58. For Defendants' violations of the FLSA, Defendants are liable to Plaintiff for unpaid overtime wages, an equal amount as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE DCMWA

59. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

60. Each Defendant was an "employer" of Plaintiff within the meaning of the DCMWA. D.C. Code § 32-1002(3).

61. The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. D.C. Code § 32-1003(c).

62. Defendants violated the DCMWA by knowingly failing to pay Plaintiff at least one and one-half times her regular hourly rate for hours worked in excess of forty hours in any one workweek.

63. Defendants' violations of the DCMWA were willful.

64. For Defendants' violations of the DCMWA, Defendants are liable to Plaintiff for unpaid overtime wages, an amount equal to three times the unpaid overtime wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## FAILURE TO PAY WAGES UNDER THE DCWPCL

65. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

66. Each Defendant was an "employer" of Plaintiff within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

67. The DCWPCL requires employers to pay an employee who is discharged no later than the working day following the discharge. D.C. Code § 32-1303(1).

68. The DCWPCL requires employers to pay an employee who quits or resigns all wages due upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever is earlier. D.C. Code § 32-1303(2).

69. For purposes of the DCWPCL, "wages" include, among other things, regular, minimum, and overtime wages. D.C Code § 32-1301(3).

70. Defendants violated the DCWPCL by knowingly failing to timely pay Plaintiff all wages due, including overtime wages.

71. Defendants' violations of the DCWPCL were willful.

72. For Defendants' violations of the DCWPCL, Defendants are liable to Plaintiff for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court. *See Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066, 1072 (D.C. 2020) ("[T]reble damages are mandatory, not discretionary, if requested."); *Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016) ("[T]he liquidated-damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.").

## COUNT IV
### FAILURE TO PROVIDE LEAVE UNDER THE EPSLA AND FLSA

73. Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

74. Each Defendant was an "employer" of Plaintiff within the meaning of the EPSLA.

75. Plaintiff qualified for leave under the EPSLA because she contracted COVID-19 and was directed to self-quarantine for 14 days, and was unable to report to work.

76. Plaintiff was entitled to 80 hours of paid leave under the EPSLA, or $1,680.00.

77. Pursuant to the EPLSA, an employer who fails to provide paid leave under the EPSLA shall be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. 215(a)(3)) and shall be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. 216; 217) with respect to such violation.

78. Accordingly, Defendants violated the EPSLA and FLSA when they failed to provide Plaintiff with 80 hours of paid leave.

79. Defendants' violations of the EPSLA and FLSA were willful.

80. For Defendants' violations of the EPSLA and FLSA, Defendants are liable to Plaintiff for $1,680.00 in unpaid wages, an equal amount as liquidated damages, reasonable attorney's fees and expenses, court costs, and any other relief deemed appropriate by the Court.

## COUNT V
### RETALIATION UNDER THE EPSLA AND FLSA

81. Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

82. Each Defendant was an "employer" of Plaintiff within the meaning of the EPSLA.

83. Under the EPLSA, an employer may not discharge, discipline, or in any other manner discriminate against any employee who takes leave in accordance with this EPSLA.

84. An employer who willfully violates the anti-retaliation provisions of the EPSLA shall be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. 215(a)(3)) and be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. 216; 217) with respect to such violation.

85. Accordingly, Defendants violated the EPSLA and FLSA when they fired Plaintiff for taking leave.

86. Defendants' violations of the EPSLA and FLSA were willful.

87. Defendants' violations of the EPSLA and FLSA were done with actual malice.

88. For Defendants' violations of the EPSLA and FLSA, Defendants are liable to Plaintiff for $30,345.00 in lost wages, an equal amount as liquidated damages, $10,000.00 in punitive damages, reasonable attorney's fees and expenses, court costs, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, jointly and severally, on all counts, in the current total amount of **$88,555.20**, and grant the following relief:

    a. Award Plaintiff $8,820.00, consisting of the following overlapping elements:

        i. unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

        ii. unpaid overtime wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

      iii.      unpaid wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

b.      Award Plaintiff $3,360.00, consisting of $1,680.00 in unpaid EPSLA leave, plus an equal amount as liquidated damages;

c.      Award Plaintiff $60,690.00, consisting of $30,345.00 in lost wages as a result of Defendants' retaliation for Plaintiff taking EPSLA leave, plus an equal amount as liquidated damages;

d.      Award Plaintiff $10,000.00 in punitive damages for Defendants' malicious retaliatory termination of Plaintiff for taking EPSLA leave;

e.      Award Plaintiff pre-judgment and post-judgment interest as permitted by law;

f.      Award Plaintiff attorney's fees and expenses computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services, pursuant to the DCWPCL, D.C. Code § 32-1308(b)(1) (as of this date, approximately $5,283.20);

g.      Award Plaintiff court costs (currently, $402.00); and

h.      Award any additional relief the Court deems just.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury as to all issues so triable.

                                    By: /s/ Justin Zelikovitz
                                    JUSTIN ZELIKOVITZ, #986001

February 24, 2022							Respectfully submitted,

**DCWageLaw**

By: /s/ Justin Zelikovitz
JUSTIN ZELIKOVITZ, #986001
519 H Street NW
Washington, DC 20001
Phone: (202) 803-6083
Fax: (202) 683-6102
justin@dcwagelaw.com

*Counsel for Plaintiff*